```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
NATURAL RESOURCES DEFENSE COUNCIL and    :
THE XERCES SOCIETY,                      :
                    Plaintiffs,          :
                                         :
            -v-                          :   09 Civ. 4317 (DLC)
                                         :
UNITED STATES ENVIRONMENTAL PROTECTION   :   OPINION & ORDER
AGENCY,                                  :
                    Defendant,           :
                                         :
BAYER CROPSCIENCE LP,                    :
            Defendant-Intervenor.        :
                                         :
----------------------------------------X
```

APPEARANCES

For Plaintiffs:

Aaron Colangelo
Natural Resources Defense Council
1200 New York Ave., NW
Suite 400
Washington, D.C. 20005

Nancy Marks
Mitchell Bernard
Natural Resources Defense Council
40 West 20th St.
New York, NY 10011

For Defendant United States Environmental Protection Agency:
Jean-David Barnea
Assistant United States Attorney
86 Chambers St., 3rd Floor
New York, NY 10007

For Defendant-Intervenor Bayer CropScience LP:
Daniel Krainin
Beveridge & Diamond, P.C.
477 Madison Ave., 15th Floor
New York, NY 10022

Anthony Michaels
David Barker
Beveridge & Diamond, P.C.
1350 I Street, NW
Suite 700
Washington, DC 20005

DENISE COTE, District Judge:

    Between June 30 and December 16, 2008, the Environmental Protection Agency ("EPA") conditionally approved applications for registrations by Bayer Cropscience LP ("Bayer") for use of the pesticide spirotetramat on hundreds of crops.  In doing so, the EPA violated the federal statutory notice and comment requirements.  In an Opinion of December 23, 2009, this Court vacated those registrations and remanded the matter to the EPA for further proceedings ("the December 23 Opinion").  Two weeks ago, the EPA gave public notice that it intends (pending consideration of any comments received by February 8), to treat the vacatur as equivalent to a cancellation and to issue an order by February 16, 2010 -- the day the district court's stay expires -- which may allow use and sale of existing stocks of spirotetramat.  Further, this month, the EPA will publish a notice for comment in the Federal Register, initiating anew the registration process for spirotetramat.

    Bayer seeks a stay pending appeal of the December 23 Opinion beyond February 16.  In addressing this application, familiarity with the December 23 Opinion is presumed.  <u>See</u>

Natural Resources Defense Council v. U.S. E.P.A., No. 09 Civ. 4317 (DLC), 2009 WL 5033959 (S.D.N.Y. Dec. 23, 2009) (hereinafter "NRDC, 2009 WL 5033959").  For the following reasons, Bayer's request for a stay beyond February 16, 2010 is denied.

BACKGROUND

The following procedural history puts Bayer's request for an extension of the stay in context.  The EPA conditionally approved between June and December 2008 five of Bayer's applications for registration of the pesticide spirotetramat.  It has conceded that in doing so it did not follow the procedural requirements of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq. Specifically, it failed to publish a notice of each application, solicit public comments on the applications, or publish a notice of issuance with accompanying information supporting the application and the agency's conclusions within thirty days of approval.

Plaintiffs filed their lawsuit on May 4, 2009.  In an amended complaint on August 21, plaintiffs claimed that defendants violated FIFRA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., by failing to (1) provide notice and opportunity for comment on Bayer's applications; (2)

provide notices of issuance for each 2008 registration decision;[1] (3) take into account the economic, social, and environmental costs and benefits of the use of spirotetramat; and (4) make the required safety finding and conduct the complete scientific review necessary to support that safety finding.  On October 21, the plaintiffs moved for summary judgment on all four claims.  On November 13, the EPA conceded the procedural violations on the first two claims, and requested a remand to the agency for further proceedings, but argued against vacatur of the registrations.  Simultaneously, it cross-moved for partial summary judgment on the plaintiffs' third and fourth claims.

More than six months after suit was filed and almost a month after the summary judgment motion was filed, Bayer moved to intervene as a defendant.  Over the plaintiffs' objection, Bayer's November 17 motion to intervene was granted in part on November 25.  Bayer was permitted to submit its own briefing on the parties' cross-motions for summary judgment to the extent it wished to address subject matter jurisdiction, what relief would be most appropriate given the EPA's concession of liability on the first two claims, and the merits of claims three and four.[2]

---

[1] Bayer did publish notices of issuance on August 6, 2009, after the inception of this lawsuit, and invited public comment.

[2] Bayer was not permitted to advance arguments defending the EPA's failure to provide notice and a comment period.  Bayer

The motions for summary judgment were fully submitted on December 18.  The December 23 Opinion granted plaintiffs' motion for summary judgment only as to the first two claims in their complaint, which arose from the procedural failures of the EPA.  It vacated the registrations of spirotetramat and remanded the matter to the EPA.[3]

By its terms, the December 23 Opinion was stayed until January 15, 2010.  Pursuant to the EPA's request on January 8, the stay was extended until February 16.  On January 20, the EPA informed the Court of how it intended to respond to the December 23 Opinion.

The EPA explained that it planned to treat Bayer's earlier-filed applications for registration of spirotetramat as now pending and to publish a new notice for comment in the Federal Register "in the next few weeks."  As for the existing stocks of spirotetramat, the EPA decided that

> the Court's action in vacating the spirotetramat registrations is best viewed under FIFRA as a cancellation of those registrations under [7 U.S.C. § 136a] (because the vacatur is based upon the Agency's failure to comply with the

---

brought its motion for intervention after the EPA had conceded liability on the notice claims in its summary judgment papers.

[3] The December 23 Opinion denied the EPA's cross motion for summary judgment on the third and fourth claims as moot.  See NRDC, 2009 WL 5033959, at *9.  Bayer's assertion that the Opinion "effectively" decided the case on the merits is in error.

> requirements of [§ 136a]).  The Agency therefore intends to issue a cancellation order under FIFRA section 6(a)(1) [7 U.S.C. § 136d(a)(1)] that will establish provisions governing the disposition of existing stocks of previously-registered spirotetramat pesticide product.

On January 25, the EPA issued a "Notice of Cancellation Order; Opportunity for Public Comment" on its website ("Notice") that requested comments by February 8 regarding a cancellation order that it intends to issue by February 16.  In the event the agency finds "no significant risk concerns associated" with spirotetramat, the EPA advised that it may "allow unlimited use of existing stocks, and unlimited sale by persons other than the registrant.  A registrant will generally be allowed to continue to sell existing stocks for 1 year after the date cancellation is requested."  In the event that there are significant risk concerns associated with the pesticide, the EPA will make a "case-by-case determination as to whether to allow the continued sale or use of existing stocks of the pesticide . . . focus[ing] on the social, economic, and environmental risks and benefits associated with such sale and use."  The EPA has not requested an extension of the stay beyond February 16.[4]

Bayer filed a notice of appeal on January 20, and two days later filed this motion for a stay pending appeal.  Its motion

---

[4] As of February 5, the EPA had not filed an appeal from the December 23 Opinion.

6

papers include five declarations from research scientists, pest control advisors, and Bayer's Product Manager for spirotetramat. None of these declarations were submitted with its summary judgment papers. In response, the NRDC has submitted five declarations from an organic farmer, beekeepers, the Director of the Science Center at NRDC, and plaintiffs' counsel. The last declaration addresses the presence or absence of financial ties between Bayer and its affiants. Bayer's motion for a stay was fully submitted on February 2, 2010.

DISCUSSION

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 129 S.Ct. 1749, 1760 (2009) (citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 1761. The four factors to be considered by a court in issuing a stay pending appeal are:

> (1) whether the stay applicant has made a
> strong showing that he is likely to succeed
> on the merits; (2) whether the applicant
> will be irreparably injured absent a stay;
> (3) whether issuance of the stay will
> substantially injure the other parties

7

>     interested in the proceeding; and (4) where
>     the public interest lies.

In re World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)); accord Nken, 129 S.Ct. at 1761.  "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other."  World Trade Center, 503 F.3d at 170 (citation omitted).

The stay of the December 23 Opinion will have been in place for two months when it expires on February 16.  The stay has given the EPA the time it needed to consider how to address the vacatur of the registrations of spirotetramat and to craft a cancellation order that will minimize disruptive effects on the agriculture industry while the EPA cures its past error and complies with FIFRA's requirements to provide notice and a comment period in advance of a registration decision.  The EPA intends to issue its cancellation order on February 16, and Bayer has not shown that the stay should be extended beyond that date.  A discussion of the four factors to be considered in connection with a request for a stay pending appeal follows.

A. Bayer's Likelihood of Success on the Merits

Bayer has not shown that its appeal of the December 23 Opinion is likely to succeed on the merits.[5] Since the EPA does not dispute that it violated FIFRA in failing to publish notice and solicit comments in advance of registering spirotetramat, Bayer will be unable to show on appeal that the December 23 Opinion erred in finding that the EPA violated the law in approving the sale of spirotetramat.

Nor will Bayer be able to show that the December 23 Opinion erred in its choice of remedy for that violation. The EPA conceded that a remand was necessary, and the only issue requiring careful consideration was whether that remand would be accompanied by vacatur of the registrations. While there is authority that vacatur is required when an agency has taken an unlawful action, NRDC, 2009 WL 5033959, at *3, the Court nevertheless exercised its discretion and weighed both the seriousness of the lack of the mandatory notice and comment period, as well as the disruption that would be caused by

---

[5] Bayer renews its argument that the Court lacked jurisdiction under the primary jurisdiction doctrine. The primary jurisdiction doctrine applies "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." Ellis v. Tribune TV Co., 443 F.3d 71, 81 (2d Cir. 2006) (citation omitted). Whether the EPA violated the procedural requirements of FIFRA is not within the special competence of the EPA. Tellingly, the EPA did not make this argument.

vacatur.  Id. at *4-6.  For example, even though a failure to provide the statutorily mandated notice and comment period "normally" requires vacatur, id. at *4, the December 23 Opinion considered a remand-only remedy.  In doing so, it examined both the EPA's and Bayer's arguments that the regulatory lapse was not sufficiently serious to warrant vacatur.  Similarly, the Opinion weighed the potential disruptions that a vacatur might cause that were identified by the EPA and Bayer's additional argument that it stood to lose tens of millions of dollars in sales if the registrations were vacated.  While Bayer quarrels with the analysis in the December 23 Opinion, its arguments fall far short of the showing required to demonstrate any abuse of discretion.

B. Bayer's Irreparable Harm

The second factor that should be considered in any decision on a stay application is whether the applicant has shown that it will suffer irreparable harm in the absence of a stay.  Bayer has failed to demonstrate such irreparable harm.

Bayer has been selling spirotetramat for over a year pursuant to unlawful registrations as a result of the EPA's failure to follow FIFRA's procedural requirements.  During that interval, it has achieved significant success in marketing its pesticide, particularly to growers of a few large commercial

crops.[6]  While the EPA's proposed cancellation order may permit use and sale of existing stocks[7] of spirotetramat by parties other than Bayer, Bayer will likely lose the ability to release for shipment any pesticide product after the cancellation order is issued on February 16.[8]  Almost immediately, however, the EPA will issue a notice of Bayer's applications to register spirotetramat and begin the comment period.  In the event that registration is denied, then Bayer will have lost nothing to which it is entitled and will have reaped a windfall of over a year's sales of a product that should never have been registered.  In the event the pesticide is registered, then Bayer will be able to resume its marketing and sales of its product.  While it will have lost sales in that interim period, it has not shown that those sales constitute the type of irreparable harm that warrants an extension of the stay beyond February 16.

---

[6] Bayer explains that commercial producers of lettuce, grapes and citrus in three large agricultural states purchase significant quantities of spirotetramat.

[7] The EPA explains that "existing stocks" of a pesticide are stocks "which have been packaged, labeled, and released for shipment prior to the effective date" of the regulatory action, such as a cancellation.  See 7 U.S.C. § 136d(a)(1).

[8] The Government's February 3, 2010 letter explains that "no matter what provisions a cancellation order makes for existing stocks, it would still be illegal for Bayer to release for shipment any pesticide product after that order's effective date."

Bayer asserts that it will lose market share before the 2010 registration process is complete.  "[L]oss of current or future market share may constitute irreparable harm," at least where it is shown that the losses cannot be recouped if the party prevails in the litigation.  <u>Grand River Enterprise Six Nations, Ltd. v. Pryor</u>, 481 F.3d 60, 67 (2d Cir. 2007) (denying a preliminary injunction); <u>see also</u> <u>Freedom Holdings, Inc. v. Spitzer</u>, 408 F.3d 112, 114-15 (2d Cir. 2005) (same).  As was true in each of the cases upon which Bayer relies, however, it has failed to demonstrate irreparable harm based on a projected loss of market share.  If the EPA registers spirotetramat in 2010, Bayer has failed to explain why it will not have the same advantages that contributed to spirotetramat's success in 2009.  Bayer describes its product as one that has unique advantages for growers.  It does not explain how it will be unable to reap the benefits of those advantages should it win regulatory approval.

Bayer asserts that it will also suffer irreparable harm in its customer relationships and stigma in the marketplace from which it will be unlikely to recover.  Bayer has not sufficiently supported or explained these assertions to show a likelihood of experiencing irreparable harm from this risk.  If spirotetramat is properly registered, Bayer can readily explain to its customers that its temporary absence from the marketplace

12

was due to the EPA's failures in 2008 to comply with the procedural requirements of federal law.  Indeed, the registration process in 2010 will give Bayer the opportunity to present to the EPA any evidence it has developed since 2008 of the effectiveness and safety of its pesticide.  Bayer has simply not shown that it will experience any significant or longstanding injury to its reputation from an order which requires a federal agency to comply with the law.  This is particularly so in light of Bayer's assertion that its product is uniquely beneficial to and very popular with certain communities of growers.

   C. Substantial Injury to Other Interested Parties

   Bayer cannot demonstrate that the test's third factor, whether other parties will be substantially injured without a stay pending Bayer's appeal, tips in favor of granting the stay.  In this regard, it is particularly noteworthy that the EPA asked for an extension of the stay solely until February 16; its application was granted.  Within the two month period that followed the issuance of the December 23 Opinion, the EPA designed a program to minimize potential disruption in the marketplace from the vacatur of the registrations.  Under the terms of the proposed cancellation order, which the EPA intends to issue on February 16, distributors and growers may be able to continue to sell and use existing stocks of spirotetramat.  The

agency will soon begin again the process of considering Bayer's registration applications in accordance with the procedural requirements of FIFRA.

    4.   The Public Interest

The public interest weighs against an extension of the current stay beyond February 16. There is a strong public interest in vindicating FIFRA's procedural requirements. See NRDC, 2009 WL 5033959, at *5. Vacating the registrations for spirotetramat pending the EPA notice and comment period during the 2010 registration process will ensure that those statutory requirements are honored and underscore to the EPA the importance of complying with that federal law.

In support of its application for a stay pending its appeal, Bayer presents for the first time five factual declarations crediting spirotetramat with reducing chemical load on the environment, use of more harmful pesticides, and food production costs. All of these factors unquestionably relate to issues of public importance. These glowing claims are debated by the plaintiffs, who have opposed this motion for a stay.[9] The plaintiffs contend, inter alia, that spirotetramat is linked to environmental harms, in particular to bee colony collapse.

---

[9] The plaintiffs argue as well that Bayer's factual submissions regarding the merits of its pesticide should have been presented during the summary judgment motion practice and not for the first time on its application for a stay pending appeal.

Whether spirotetramat poses "unreasonable adverse effects on the environment," including a risk to bees, is for the EPA to determine.  7 U.S.C. § 136a(c)(5).  It is noteworthy that the EPA has not supported Bayer's motion for a stay or requested on its own behalf a stay beyond February 16.

The EPA is in the process of initiating a comment period that will give it an opportunity to receive, analyze and consider all of the data presented by the proponents and opponents of spirotetramat.  Through that process, it will apply its expertise to make a registration decision.  Should it register spirotetramat, it can do so by limiting the crops to which it is applied and restricting the manner in which it is used.  Such limitations and restrictions may or may not duplicate those it issued in 2008.  Given this context, Bayer has not demonstrated that its ability to continue to manufacture and sell its unregistered pesticide pending appeal weighs in the public interest.

Finally, Bayer's delays in pursuing this litigation weigh strongly against an extension of the existing stay.  Bayer is an intervenor; neither the plaintiffs nor the defendant have requested a further stay.  And, Bayer waited six months after the lawsuit was filed to intervene.  Its motion to intervene came roughly a month after the plaintiffs filed their motion for summary judgment and days after the EPA opposed that motion and

made its own cross-motion. Bayer then attempted to inject a host of arguments into the litigation that the EPA did not assert to defend the EPA's registrations of Bayer's pesticide. It waited nearly a full month after the filing of the December 23 Opinion and roughly two weeks after the EPA requested a limited stay before it filed this motion for an unlimited stay pending appeal. The Court has allowed Bayer to be heard and has fully accounted for its legitimate interests in this litigation. It has failed to show, however, that the existing stay should not be allowed to expire on February 16.

CONCLUSION

Bayer's January 22, 2010 motion for a stay pending appeal is denied.

SO ORDERED:

Dated:   New York, New York
         February 8, 2010

                                    _____
                                            DENISE COTE
                                    United States District Judge